# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

    *Plaintiff,*

vs.

    Case No. 11-10117-EFM

OSCAR GALINDO,

    *Defendant.*

## MEMORANDUM AND ORDER

After conviction by a jury on four counts of fraud and identity theft, Defendant Oscar Galindo brings this Motion for Judgment of Acquittal or a New Trial under Rule 29(c) of the Federal Rules of Criminal Procedure (Doc. 49). Defendant alleges that the evidence presented at trial is insufficient to support the jury's guilty verdicts. A court may set aside a guilty verdict if no reasonable jury could have found that the evidence, when viewed in a light most favorable to the prosecution, proved the essential elements of the crime beyond a reasonable doubt. Here, the prosecution presented sufficient circumstantial evidence that a reasonable jury could conclude that Defendant knowingly and intentionally committed identity theft and made false statements to a federal officer. Consequently, the Court denies Defendant's motion.

## I. Factual and Procedural History

The Government elicited the following evidence and testimony at trial. A court in Cowley County, Kansas, issued an arrest warrant for Defendant Oscar Galindo in connection with a drug investigation. The warrant was related to a case being investigated by Special Agent Greg Skelton, an employee of the Kansas Bureau of Investigation ("KBI") who was working on assignment with the United States Drug Enforcement Administration ("DEA"). On or about January 7, 2011, Agent Skelton saw Galindo's wife driving Galindo's car in Wichita and stopped the vehicle so he could identify a passenger in the car. When Agent Skelton got out of his unmarked truck, the passenger of Galindo's car also exited and began approaching Agent Skelton. Agent Skelton was wearing street clothes and his KBI badge. He identified himself as a KBI agent and asked the passenger to stop. When Agent Skelton approached the passenger, he recognized Galindo from past dealings. Nonetheless, when Agent Skelton asked for Galindo's identification, Galindo produced from his wallet a State of Oklahoma identification card and a Social Security card bearing the name "Severiano Ruiz." Agent Skelton questioned Galindo as to his true identity, but Galindo insisted he was Severiano Ruiz. After Agent Skelton told Galindo that his wife could be in trouble for harboring a fugitive, Galindo admitted that he was in fact Oscar Galindo. Agent Skelton then executed the Cowley County arrest warrant and took Galindo into custody.

The Government indicted Galindo on four counts: (1) knowingly and intentionally possessing documents indicating he was authorized to be present and employed in the United States that were fraudulently and unlawfully obtained, in violation of 18 U.S.C. § 1546(a); (2) aggravated identity theft in connection with Count 1, in violation of 18 U.S.C. § 1028(a)(1); (3) knowingly, willfully, and intentionally making a materially false statement to a federal agent, in violation of 18

U.S.C. § 1001(a)(2); and (4) aggravated identity theft in connection with Count 3, in violation of 18 U.S.C. § 1028(a)(1). According to trial testimony, when Immigration and Customs Enforcement ("ICE") Agent Jay Ferreira and KBI Agent Chris Bumgarner transferred Galindo to the federal courthouse for arraignment on these charges, Galindo asked Agent Ferreira why he had been arrested. The agent told Galindo that he was arrested was for identity theft. Galindo responded that he knew that was coming, and that there were about 300 other people that were also using that Social Security number.

At trial, an official from the Social Security Administration ("SSA") verified that the Social Security card in Galindo's possession was a valid card listing the correct Social Security number for a Severiano Ruiz, and that nine Social Security cards had been issued to Mr. Ruiz since 1972. Agent Bumgarner testified that he contacted the SSA and learned that four individuals were using Mr. Ruiz's Social Security number to deposit earnings into Social Security. A State of Oklahoma Driver's License Examiner also verified that the identification card Galindo provided to Agent Skelton was a valid card bearing the name and address of a Severiano Ruiz. Upon investigation, Agent Bumgarner learned the contact information on the card was false.

At the close of the Government's case, Galindo made a motion for judgment of acquittal under Fed. R. Crim. P. 29(a). Galindo argued that the Government failed to produce sufficient evidence of Galindo's guilt because (1) the evidence did not show, beyond a reasonable doubt, that the Social Security and state identification cards were evidence of authorized stay or employment in the United States; (2) the Oklahoma identification card was a state card and its possession could not be prosecuted in federal court; (3) Galindo's production of the cards was not a material statement to a federal agency because Agent Skelton already knew Galindo's true identity; (4) Agent Skelton

was acting as a state officer rather than federal agent at the time he arrested Galindo; and (5) Counts 2 and 4 were duplicative. Ruling from the bench, the Court denied the Rule 29 motion. The jury then convicted Galindo on all four counts.

Galindo now renews his motion for judgment of acquittal under Rule 29(c) of the Federal Rules of Criminal Procedure. In his motion, Galindo renews all of the arguments he previously made under Rule 29(a). Additionally, Galindo argues that the Government presented insufficient evidence to support his convictions on Counts 1 and 2 because those crimes require specific intent. Galindo also contends that his convictions on Counts 3 and 4 must be set aside because the Government failed to prove beyond a reasonable doubt that Agent Skelton was acting as an agent of the federal government at the time of Galindo's arrest.[1]

## II. Analysis

When reviewing the sufficiency of evidence to sustain a guilty verdict, the Court "asks whether, 'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' "[2] The Court may consider all direct and circumstantial evidence admitted at trial[3] as well as "all reasonable inferences to be drawn therefrom."[4] Substantial evidence must support the conviction, but "it need not conclusively exclude every other reasonable hypothesis and it need not negate all possibilities

---

[1] Because Galindo's three-page motion and memorandum consists only of single-sentence assertions of error, the Court's ability to analyze his claims is compromised. And because Galindo did not request any official transcripts, the Court cannot cite to a record and has instead done its best to recreate Galindo's oral arguments from the trial that occurred almost a month prior to the date Galindo filed his motion.

[2] *United States v. Magallanez*, 408 F.3d 672, 681 (10th Cir. 2005) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

[3] *See United States v. Montgomery*, 468 F.3d 715, 719 (10th Cir. 2006).

[4] *United States v. Wacker*, 72 F.2d 1453, 1462 (10th Cir. 1995) (citations omitted).

except guilt."[5] Furthermore, the Court cannot cast aspersions on the credibility of witnesses or weigh conflicting evidence, because "these matters are within the exclusive providence of the jury."[6]

**A.    Sufficient evidence supports Galindo's conviction on Count 1 for possessing or using unlawfully-obtained identification documents.**

Count 1 of the indictment charged that Galindo violated 18 U.S.C. § 1546(a) by "knowingly and intentionally possessed and used documents prescribed by statute and regulation as evidence of authorized stay and employment in the United States knowing them to have been procured by fraud and unlawfully obtained."[7] To convict Galindo on this count, the jury was instructed that it had to conclude the Government proved the following elements beyond a reasonable doubt: (1) Galindo knowingly possessed or used a Social Security card or State of Oklahoma identification card that was procured by fraud or unlawfully obtained; (2) Galindo knew the Social Security card or state identification card was procured by fraud or unlawfully obtained; and (3) the Social Security card or state identification card Galindo possessed or used is prescribed by statute or regulation as evidence of authorized stay or employment in the United States. Galindo contends that the evidence submitted at trial is insufficient to prove any of the aforementioned elements.

*1.    A Social Security card is evidence of U.S. employment authorization.*

The Court will first address Galindo's claim that the Government did not prove beyond a reasonable doubt that a Social Security card or State of Oklahoma identification card are evidence

---

[5] *United States v. Vallejos*, 421 F.3d 1119, 1122 (10th Cir. 2005).

[6] *Magallenez*, 408 F.3d at 682 ("The jury apparently believed the witnesses, and that is the end of the matter.").

[7] Count 1 of the indictment also states that Galindo is "a citizen of Mexico who is not a citizen or national of the United States." This statement is correct, but that portion of the indictment was not read to the jury because the defendant is a lawful permanent resident of the United States and his citizenship status is irrelevant.

of authorized stay or employment in the United States. As previously stated, 18 U.S.C. § 1546(a) prohibits the use of fraudulent or unlawfully obtained documents that are "prescribed by statute or regulation . . . as evidence of authorized stay or employment in the United States." In this case, Jury Instruction No. 10 set out the elements of § 1546, and included the following advisement: "Federal law provides that a Social Security card or a state-issued identification card is evidence that a person is authorized to be present in the United States or to be employed in the United States."[8] Galindo objected to the inclusion of this language, arguing both that the Government failed to prove that element and that the issue was not in the purview of the jury and was thus confusing. The Court overruled both objections, finding that the third element of § 1546 was a legal issue and the quoted advisement was both proper and necessary to *avoid* jurors' confusion.

The Court maintains its position that the issue of whether a given document is evidence of authorized stay and employment in the United States is legal in nature, and thus an advisement to the jury on that element was appropriate. The instruction provided, however, was partially flawed. A state-issued identification card is not a document prescribed by statute as evidence of authorized stay or employment in the United States. Federal employment verification regulations list "[a] driver's license or identification card containing a photograph, issued by a state" as evidence "acceptable to establish identity *only*."[9] Furthermore, the fact that a state-issued identification card can be used in conjunction with other identification as proof of employment authorization is

---

[8] Doc. 43, p. 12.

[9] 8 C.F.R. § 274a.2(b)(1)(v)(B)(1)(i) (emphasis added); *see also United States v. Singh*, 335 F.3d 1321, 1322 (11th Cir. 2003) (charging a defendant who was found to possess false driver's licenses and passports with violating § 1546(a) only with respect to the passport); *United States v. Chandler*, 98 F.3d 711, 713 (2d Cir. 1996) (same).

insufficient to satisfy the Government's burden under § 1546(a).[10] In *United States v. Phillips*, the Tenth Circuit held that an application for a permit to remain in or reenter the country did not fall within the purview of § 1546(a) because the application by itself was not evidence of authorized stay or employment in the United States.[11] Similarly, because a state-issued identification card by itself is not evidence of authorized stay or employment in the United States, proof that Galindo possessed or used the Oklahoma identification card is insufficient to sustain his conviction under § 1546(a).

Nevertheless, the Government was required to prove only that the Social Security card *or* the state identification card was evidence of authorized stay or employment. The Code of Federal Regulations explicitly lists a Social Security card as an "acceptable document[] to establish employment authorization."[12] Therefore, if sufficient evidence exists to prove the other elements of § 1546(a) with respect to the Social Security card, the erroneous instruction was harmless. Consequently, the Court will address Galindo's arguments concerning Counts 1 and 2 only as they relate to the Social Security card.

### 2. *The Government did not need to prove that Galindo possessed* **and** *used the Social Security card.*

At trial, Galindo argued that the Government had to prove that he both possessed *and* used the unlawfully-obtained Social Security card because the indictment charged Galindo in the conjunctive. Although the Court accepted Galindo's theory for the purposes of his Rule 29(a) motion, after further research, the Court now acknowledges that "[i]t is hornbook law that a crime

---

[10] *See, e.g.*, 8 U.S.C. § 1324a(b)(1) (stating that an employer must verify that an individual is not an unauthorized alien by examining a state-issued identification card with a photograph in addition to one of the forms of identification enumerated in 8 U.S.C. § 1324a(b)(1)(C)).

[11] 543 F.3d 1197, 1205–08 (10th Cir. 2008).

[12] 8 C.F.R. § 274a.2(b)(1)(v)(C)(1).

denounced in the statute disjunctively may be alleged in an indictment in conjunctive, and thereafter proven in the disjunctive."[13]

Under English common-law, judgments on indictments for multiple offenses were sustained even if one count was flawed.[14] The Supreme Court subsequently applied that principle in other criminal contexts, including "a general jury verdict under a *single* count charging the commission of an offense by two or more means."[15] For that reason, prosecutors regularly "charge conjunctively, in one count, the various means of committing a statutory offense, in order to avoid the pitfalls of duplicitous pleading."[16] And when reviewing a defendant's conviction on such a count, the Supreme Court has said: "The general rule is that when a jury returns a guilty verdict on an indictment charging several acts in the conjunctive, . . . the verdict stands if the evidence is sufficient with respect to any one of the acts charged."[17]

Applying that rule to the present case, the Court cannot set aside Galindo's conviction on Count 1 if a reasonable jury considering the evidence could find, beyond a reasonable doubt, that Galindo either possessed *or* used the unlawfully-obtained Social Security card. Because Agent Skelton's uncontroverted testimony established that Galindo had the fraudulent Social Security card in his possession at the time of his arrest, the Government presented sufficient evidence for a

---

[13] *United States v. Gunter*, 546 F.2d 861, 868–69 (10th Cir. 1976), *accord United States v. Sprenger*, 625 F.3d 1305, 1308 (10th Cir. 2010).

[14] *Griffin v. United States*, 502 U.S. 46, 49 (1991) (citing Francis Wharton, *A Treatise on Criminal Pleading and Practice* § 771, pp. 533–36 (9th ed. 1889)).

[15] *Id.* at 50.

[16] *Id.* at 51.

[17] *Turner v. United States*, 396 U.S. 398, 420 (1970) (upholding a defendant's conviction when the indictment charged him with purchasing, possessing, dispensing, *and* distributing heroin, and the underlying statute listed those acts in the disjunctive).

reasonable jury to conclude that Galindo possessed or used the Social Security card as prohibited in § 1546(a).

> 3. *The Government presented sufficient circumstantial evidence that Galindo knew the Social Security card was fraudulently or unlawfully obtained.*

Finally, Galindo contends that the Government did not present sufficient evidence to prove beyond a reasonable doubt that Galindo knew the Social Security card was fraudulently or unlawfully obtained. The Court disagrees. First, as Galindo himself admitted, his name is not Severiano Ruiz. Yet he held a Social Security card bearing that name. And the SSA official testified that the SSA issued Galindo a Social Security number that did not match the number on the Social Security card. A reasonable jury could therefore infer that Galindo knew the Social Security card was not his own.[18] Furthermore, the jury could infer *mens rea* from the circumstantial evidence that (1) the State of Oklahoma identification card bore the same name as the Social Security card, Severiano Ruiz, beside a picture of Galindo and false contact information; and (2) Galindo provided the Oklahoma Driver's License Examiner with a birth certificate for Severiano Ruiz. Taken together, the evidence of false information Galindo presented to the Oklahoma official and on the face of both cards was sufficient for a reasonable jury to conclude that Galindo knew the Social Security card was not lawfully obtained. Because the jury could conclude from the evidence submitted at trial that the Government proved beyond a reasonable doubt each element of 18 U.S.C.

---

[18] *See, e.g.*, *United States v. Yuan Chen Ling*, 2012 WL 555725, at *2 (11th Cir. Feb. 17, 2012) (finding sufficient evidence that a defendant knew a Singaporean passport was counterfeit because the Government proved the defendant knew she was not Singaporean and had previously traveled with her own Chinese passport and knew what it looked like).

§ 1546(a), with respect to the Social Security card, the Court finds that sufficient evidence supports Galindo's conviction on Count 1 of the indictment.[19]

**B.      Sufficient evidence supports Galindo's conviction on Count 3 for making a false statement to a federal officer.**

Galindo alleges that the Government did not meet its burden of proving that Galindo violated 18 U.S.C. § 1001(a)(2) when he told Agent Skelton that his name was Severiano Ruiz and presented the agent with the Social Security and state identification cards. Section 1001(a)(2) makes it a crime to "knowingly and willfully . . . make[] any materially false, fictitious, or fraudulent statement or representation" in connection with "any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States." In this case, the Government had to prove the following elements beyond a reasonable doubt: (1) Galindo made a false or fraudulent statement or representation about his identity, specifically, that he was Severiano Ruiz; (2) Galindo made the statement or representation about his identity knowing that it was false; (3) Galindo made the statement or representation willfully; (4) the statement or representation was made in a matter within the jurisdiction of the federal government; and (5) Galindo's identity was material to the DEA.[20] Galindo asks the Court to overturn his conviction under this statute on the grounds that the Government failed to prove the last two elements—that Agent Skelton was acting as a federal officer when he executed the Cowley County warrant and that Galindo's misidentification was not a material statement.

---

[19] Because a reasonable jury could find that the Government met its burden of proving, beyond a reasonable doubt, that Galindo's possession of the Social Security card violated 18 U.S.C. § 1546(a), the Court need not address Galindo's renewed argument that his conviction in federal court cannot stand because the Oklahoma driver's license is a state-issued document.

[20] *See* 18 U.S.C. § 1001(a)(2); *United States v. Manning*, 526 F.3d 611, 613 n.1 (10th Cir. 2008).

### *1. A reasonable jury could conclude from the evidence that Agent Skelton was acting as a federal officer at the time Galindo made the false statement about his identity.*

It is well-settled that a law enforcement officer may be cross-deputized as both an officer of the state and federal governments.[21] But Galindo argues that Agent Skelton was acting in his capacity as a state law enforcement officer with the KBI when he executed the Cowley County warrant for Galindo's arrest. The Court rejects this argument for two reasons. First, §1001(a)(2) contains "no basis for requiring proof that the defendant had actual knowledge of federal agency jurisdiction."[22] Whether Galindo knew that Agent Skelton was acting as a federal agent is irrelevant. Second, §1001(a) does not require that a defendant make a false or fraudulent statement *to a federal officer*. Instead, the statement or representation must be made "in any matter within the jurisdiction of . . . the Government of the United States."[23]

At Galindo's trial, the jury heard testimony that Agent Skelton first received credentials identifying him as a task force officer with the DEA in 2007. Agent Skelton also testified that some of the DEA's investigations do not meet certain thresholds for federal prosecution, and in that case, the DEA will remain involved with the case while it is prosecuted in the state courts. With respect to Galindo's case, KBI Agent Bumgarner contacted Agent Skelton with information about Galindo because both agents were interested in Galindo. Agent Bumgarner testified that he contacted Agent Skelton due to his position with the DEA and described Agent Skelton as the KBI's local DEA representative. Agent Skelton confirmed that the DEA was interested in Galindo as part of an

---

[21] *See, e.g.*, *United States v. Diamond*, 53 F.3d 249, 251 (9th Cir. 1995) (finding that a state officer who was cross-deputized as a special deputy U.S. marshal and was assisting the FBI when he was assaulted by the defendant fell within the definition of "federal officer" in 18 U.S.C. § 111, which criminalizes assaults on federal officers).

[22] *United States v. Yermian*, 468 U.S. 63, 69 (1984).

[23] 18 U.S.C. § 1001(a)(2).

investigation that the DEA had a large amount of time and money invested in, and that the warrant issued in Cowley County was connected to that DEA investigation. Given Agent Skelton's testimony about the DEA investigation, a reasonable jury could find that Galindo falsely identified himself as Severiano Ruiz "in [a] matter within the jurisdiction of the executive . . . branch of the Government of the United States."

### 2. *A reasonable jury could conclude that Galindo's identity was material to the DEA's drug investigation.*

Galindo next argues that the Court must reverse his conviction on Count 3 because the Government failed to prove beyond a reasonable doubt that Galindo's true identity was material to the DEA's investigation. A statement is material if it has "a natural tendency to influence, or be capable of influencing, the decision of the decisionmaking body to which it was addressed."[24] In other words, the Court examines what statement was made, what decision the government agency was trying to make, and then decides whether the former was capable of influencing the latter.[25]

Galindo argued at trial that his false statement was not material because Agent Skelton testified that he believed the passenger in Mrs. Galindo's car was Oscar Galindo. Consequently, argued Galindo, falsely representing himself to be Severiano Ruiz did not influence the DEA's investigation. But almost every circuit has rejected this subjective interpretation, instead stating that

---

[24] *United States v. Gaudin*, 515 U.S. 506, 509 (1995) (citation and quotation marks omitted); *see also United States v. Harrod*, 981 F.2d 1171, 1176 (10th Cir. 1992).

[25] *See United States v. Abrahem*, ___ F.3d ___, 2012 WL 1371419, at *3 (5th Cir. Apr. 20, 2012) (citations omitted).

-12-

the test for materiality is objective.[26] Citing Supreme Court precedent,[27] most circuits hold: "[T]he materiality requirement of a § 1001 violation is satisfied if the statement is *capable* of influencing or affecting a federal agency. The false statement need not have *actually* influenced the agency."[28]

In this case, Agent Skelton was deciding whether to arrest Galindo pursuant to a warrant. As noted, Agent Skelton testified that Galindo was wanted in connection with a DEA investigation. Therefore, the DEA had a vested interested in whether Agent Skelton could lawfully arrest Galindo. And Galindo's identity was undoubtedly material to the decision to arrest Galindo; Agent Skelton had authority to arrest Oscar Galindo, but there was no apparent reason to arrest Severiano Ruiz. Whether or not Galindo's false representation actually influenced Agent Skelton's decision to arrest Galindo, the statement about his identity was capable of influencing that decision. Therefore, a reasonable jury could conclude that Galindo's false statement was material under § 1001(a)(2).

---

[26] *See, e.g.*, *United States v. Lupton*, 620 F.3d 790, 806 (7th Cir. 2010) ("We do not require the statement to *actually* influence the agency to which it was directed, or even that the agency rely on the statement in any way."); *United States v. Moore*, 612 F.3d 698, 701–02 (D.C. Cir. 2010) ("[A] statement need not actually influence an agency in order to be material . . . ."); *United States v. Siemaszko*, 612 F.3d 450, 470 (6th Cir. 2010) ("[W]e have found that the government need not prove that the statement *actually* influence [the agency] to carry its burden of proof." (Citation and quotation marks omitted.)); *United States v. Boffil-Rivera*, 607 F.3d 736, 742 (11th Cir. 2010) ("The statement does not have to be relied upon and can be material even if it is ignored and never read."); *United States v. Najera Jimenez*, 593 F.3d 391, 400 (5th Cir. 2010) ("[A]ctual influence or reliance by a government agency is not required. The statement may still be material even if it is ignored or never read by the agency receiving the misstatement." (Citations and quotation marks omitted.)); *United States v. McBane*, 433 F.3d 344, 350–51 (3d Cir. 2005) (stating that materiality "require[s] only that the false statement at issue be of a type capable of influencing a *reasonable* decisionmaker"); *United States v. Robertson*, 324 F.3d 1028, 1030 (8th Cir. 2003) ("Materiality does not require proof that the government actually relied on the statement."); *United States v. Sarihifard*, 155 F.3d 301, 306 (4th Cir. 1998) ("It is irrelevant whether the false statement actually influenced or affected the decision-making process of the agency or fact finding body."); *United States v. Service Deli, Inc.*, 151 F.3d 938, 941 (9th Cir. 1998); *United States v. Edgar*, 82 F.3d 499, 510 (1st Cir. 1996) ("[T]he standard is not whether there was actual influence, but whether it would have a tendency to influence.").

[27] *See McBane*, 433 F.3d at 350–51 (citing *Kungys v. United States*, 485 U.S. 759 (1988) and *Brogan v. United States*, 522 U.S. 398 (1998)).

[28] *Service Deli, Inc.*, 151 F.3d at 941 (internal citations omitted) (second emphasis added).

With respect to Count 3, a reasonable jury viewing the evidence in a light most favorable to the jury could find that the Government proved each element of § 1001(a)(2) beyond a reasonable doubt. Therefore, sufficient evidence supports Galindo's conviction on Count 3.

**C.     Sufficient evidence supports Galindo's convictions on Counts 2 and 4 for aggravated identity theft.**

Finally, Galindo argues that the Court must set aside the jury's guilty verdicts on Counts 2 and 4 because the Government failed to prove specific intent and because the charges are multiplicitous of Counts 1 and 3. Aggravated identity theft under 18 U.S.C. § 1028(a)(1) requires proof that—in connection with a predicate felony, as charged in Counts 1 and 3—the defendant: (1) knowingly and intentionally possessed or used an identification document associated with another person; (2) knew the identification document was associated with another person; and (3) possessed or used the identification documents without lawful authority.[29] The Court finds that the Government presented sufficient evidence of Galindo's intent and that the counts are not multiplicitous.

   *1.     A reasonable jury, viewing the evidence in a light most favorable to the prosecution, could find beyond a reasonable doubt that Galindo possessed the requisite knowledge under 18 U.S.C. § 1028(a).*

First, the Court notes that the federal courts, under the Model Penal Code, have abandoned the historical distinction between "general intent" and "specific intent" crimes, instead focusing on the defendant's state of mind.[30] Section 1028(a) requires a knowing state of mind; the Government

---

[29] *See United States v. Abdelshafi*, 592 F.3d 602, 607 (4th Cir. 2010); *United States v. Hines*, 472 F.3d 1038, 1039 (8th Cir. 2007).

[30] *See United States v. Bailey*, 444 U.S. 394, 404 (1980); *see also United States v. Manatau*, 647 F.3d 1048, 1050–51 (10th Cir. 2011) (noting that the Model Penal Code "[t]ak[es] pains to distinguish intent from knowledge" and that "[t]he simple fact is intent and knowledge are different thing, different as a matter of their plain meaning"); *United States v. Hall*, 281 Fed. App'x 809, 814 (10th Cir. 2008) ("[T]he terms *specific intent* and *general intent* are ambiguous and their use is often confusing . . . . The Supreme Court has suggest that rather than attempt to define these terms, '[a]

must prove that the defendant was (1) aware of the nature of his conduct and (2) had an awareness of or firm belief in the existence of a relevant circumstance.[31] As applied to § 1028(a) in this case, the Government had to prove Galindo was aware that he possessed or used the Social Security or Oklahoma identification card, that he did so without lawful authority, and that the cards belonged to a real person. The fact that Galindo produced the Ruiz documents when asked for identification proves that Galindo knew the documents were in his possession. The fact that the cards did not bear Galindo's personal information is circumstantial evidence that Galindo knew he possessed the cards without lawful authority. Galindo's statement to the KBI agents that 300 other people used Severiano Ruiz's identity, the fact that numerous Social Security cards have been issued to Severiano Ruiz, and Galindo's presentation of a birth certificate for Severiano Ruiz to the Oklahoma Driver's License Examiner are circumstantial evidence that Galindo knew Severiano Ruiz is a real person. And viewing this evidence in a light most favorable to the prosecution, the Court concludes that a reasonable jury could find beyond a reasonable doubt that Galindo had the requisite knowledge to support a conviction under 18 U.S.C. § 1028(a).

### 2. *Galindo's charges are not multiplicitous because each contains a provision requiring proof of a fact not required by the others.*

Section 1028(a)(1) adds a mandatory two-year term of imprisonment to a defendant's sentence if the defendant, in connection with a predicate felony, "knowingly and without lawful authority produce[d] an identification document, authentication feature, or a false identification

---

more useful instruction might relate specifically to the mental state required under' the particular statute in question." (Internal citation omitted.)).

[31] Model Penal Code § 2.02(2)(b) (A.L.I. 2010).

document."[32] Because the crime of aggravated identity theft requires the Government to prove that the defendant committed a predicate felony, a second charge must accompany any charge under § 1028(a)(1). That second charge is not multiplicitous of an aggravated identity theft charge if one of the two charges requires proof of a fact the other does not.[33]

In this case, Counts 2 and 4—charging Galindo with aggravated identity theft—are related to, but separate from, the substantive charges in Counts 1 and 3. First, although Counts 1 and 2 both require a showing that the Social Security card was unlawfully obtained, each count contains elements not found in the other. For example, to convict Galindo on Count 1, the jury had to find that the Social Security card was proof of authorized stay or employment in the United States.[34] And to convict Galindo of aggravated identity theft as alleged in Count 2, the Government had prove that Galindo "knew that the means of identification at issue belonged to another person."[35] Second, the aggravated identity theft charge in Count 4 is not multiplicitous of Count 3, which charged Galindo with making a false statement to a federal officer. In addition to the unique knowledge requirement of aggravated identity theft mentioned above, Count 3 contains no provisions about identification documents—the jury could convict Galindo for simply stating aloud that he was Severiano Ruiz.

---

[32] Social Security cards are "identification documents" as that term is used in § 1028, despite the fact that proving the identity of the holder is not the primary function of a Social Security card. *See United States v. Quinteros*, 769 F.2d 968, 969–70 (4th Cir. 1985).

[33] *See Blockburger v. United States*, 284 U.S. 299, 304 (1932); *United States v. Swingler*, 758 F.2d 477, 491 (10th Cir. 1985).

[34] *See* 18 U.S.C. § 1546(a).

[35] *Flores-Figueroa v. United States*, 556 U.S. 646, 657 (2009).

Furthermore, although Counts 2 and 4 both charged Galindo with aggravated identity theft under 18 U.S.C. § 1028(a)(1), the two counts are not multiplicitous because they each correspond with a different predicate felony. By charging Galindo in this matter, the Government submitted to the jury a theory that Galindo committed two acts of aggravated identity theft—one in connection with his unlawful possession or use of Severiano Ruiz's Social Security card and a second act in connection with Galindo's false representation to Agent Skelton that Galindo was Severiano Ruiz. Under this theory, the Government had to prove in Count 2 that Galindo violated 18 U.S.C. § 1546(a) as alleged in Count 1, and to convict Galindo on Count 4, the Government had to prove that Galindo violated 18 U.S.C. § 1001(a)(2) as alleged in Count 3. Consequently, because each count of the indictment required the Government to prove an element unique to that charge, none of Galindo's charges were multiplicitous of each other.

For the reasons discussed above, the Court concludes that a reasonable jury viewing the evidence submitted at trial in a light most favorable to the prosecution could find Galindo guilty of the crimes charged. Therefore, the Court holds that sufficient evidence supports Galindo's convictions on each count of the indictment.

**IT IS ACCORDINGLY ORDERED** this 30th day of May, 2012 that Defendant's Motion for Judgment of Acquittal or a New Trial (Doc. 49) is hereby **DENIED**.

**IT IS SO ORDERED**.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE